UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HOLIDAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-01648-SEB-DLP |
| ) | |
| PAUL A. TALBOT, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Paul Holiday filed this action on April 23, 2019, contending that his civil rights were violated while he was incarcerated in the Indiana Department of Correction ("IDOC"). Mr. Holiday claims that the defendants provided deficient medical care and exhibited deliberate indifference to an infection that developed after he received a tuberculosis ("TB") skin test.

The defendants moved for summary judgment arguing that Mr. Holiday failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit. The Court then appointed counsel for Mr. Holiday. Counsel has ably represented Mr. Holiday and the Court is grateful for counsel's efforts in this matter. Mr. Holiday responded to the motion for summary judgment and the defendants replied. The motion is now ripe for review.

**I.      Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896

(7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

## II.   Facts

At all times relevant to his complaint, Mr. Holiday was confined by the IDOC at Pendleton Correctional Facility.

### A. The Grievance Process

The IDOC has a grievance process which is intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement prior to filing suit in court. As an IDOC inmate, Mr. Holiday had access to the grievance process. Upon arrival at the facility, all inmates receive a handbook which contains information about the grievance process. Dkt. 43-1.

The grievance process consists of four steps. First, an inmate must attempt to resolve the issue informally. If informal attempts to resolve an inmate's concern fail, he must file a formal grievance within ten business days from the date of the incident. This is the second step of the

grievance process. Third, if the inmate is not satisfied with the response to the formal grievance, he may submit an appeal to the warden. Finally, if the inmate is not satisfied with the response from the warden or the warden's designee, he may file an appeal to the IDOC grievance manager. Exhaustion of the grievance procedure requires pursuing a grievance to the final step. *Id*.

The IDOC's grievance records for Mr. Holiday reflect that he successfully filed a grievance in 2005 which was not related to medical issues. IDOC records show no other formal grievances. *Id*. As will become clear in the fact section below, rejected grievances are not logged in the IDOC system.

### B. Mr. Holiday's TB Test and Attempts to Grieve

Mr. Holiday alleges that on February 15, 2019, Nurse R. Davis injected TB test solution into his left forearm. She administered the injection while Mr. Holiday extended his arm through his cell door's cuff port. She did not wear gloves and did not swab his arm with sterilization solution before administering the injection. Soon thereafter, Mr. Holiday's injection site turned red and began to itch and his chest began to hurt. On March 2, 2019, he submitted a healthcare request form to request that his arm be examined. On March 8, 2019, Nurse Davis checked Mr. Holiday's arm. She said it looked "bad" and that he would be seen by medical staff "ASAP." Dkt. 23-2 at 2.

After waiting a few days, Mr. Holiday submitted another healthcare request form on March 12, 2019. He was seen by Dr. Talbot later that day. Dr. Talbot noted a resolving infection at the injection site, prescribed a topical antibiotic, and ordered another TB skin test and a chest X-ray for Mr. Holiday. The skin test and chest X-ray were performed that day by Nurse Davis, but Mr. Holiday alleges that he never received the results of either the skin test or the X-ray.

On March 20, 2019, Mr. Holiday submitted a request for interview to grievance specialist V. Shepherd stating his desire to grieve his lack of medical treatment:

> I have continuously contacted these medical staff employee(s) for responses that took place on 2-15-2019, resulting [in] a contracted infection to a TB injection site. I have not received response from Wexford HSA Michelle LaFlower or Dr Talbot or Rebecca Davis in my grievances so I am resubmitting them.

Dkt. 43-1 at 3.

The parties dispute whether V. Shepherd treated this request for interview as a formal grievance, but neither party addresses Mr. Holiday's formal grievance produced by the defendants at docket 43-12 which restates his complaints from the request for interview, complains that his TB test was administered in an unsafe manner and that his injection sight "got infected." He requested to be retested, to have a chest X-ray, and that medical staff stop doing blood draws in cell houses because it is unsanitary. Importantly, Mr. Holiday listed the date of incident on the grievance as February 15, 2019. The date of the "received" stamp on the grievance form is illegible, but Mr. Holiday submitted the grievance on March 6, 2019, before he had been seen by Dr. Talbot. Dkt. 43-12.

Grievance specialist Shepherd rejected Mr. Holiday's grievance on March 25, 2019, because it had been submitted too late and did not state any good reason for the delay. Dkt. 43-1 at 11. Although it is unclear whether grievance specialist Shepherd was rejecting Mr. Holiday's request for interview or his formal grievance, the reason for rejection could have applied to either of his submissions. Mr. Holiday attempted to file grievance appeals before receiving the rejection of the formal grievance. The appeals were also rejected because he did not first submit a timely formal grievance. Dkt. 43-1 at 18.

### III. Discussion

The defendants argue that Mr. Holiday failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against them. The PLRA requires

that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required.").

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). For example, an administrative procedure is unavailable when "it operates as a simple dead end," when it "might be so opaque that it becomes, practically speaking, incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

It is the defendants' burden to establish that the administrative process was available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an

affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

There is no dispute that the grievance process was available to Mr. Holiday and that he was able to submit informal grievances, formal grievances, and grievance appeals. The question is whether his formal grievance was submitted too late. In deciding this question, the Court relies on the formal grievance submitted by Mr. Holiday on March 6, 2019, in which he provided an incident date of February 15, 2019. The body of that grievance mentions that Mr. Holiday's arm "got infected," but otherwise the grievance focuses on the conditions in which his TB test was administered on February 15, 2019. The grievance was submitted more than ten business days after that incident and was therefore untimely. When Mr. Holiday received the rejection of the grievance, he could have resubmitted a grievance with information about his more recent treatment by Dr. Talbot and the other defendants to make clear that his complaint was ongoing, but he did not.

While it is true that a defendant need not file a new grievance each day of an ongoing condition, it was reasonable for the grievance specialist to interpret Mr. Holiday's grievance as concerning the events that occurred on February 15, 2019, rather than ongoing concerns he had about his arm. The same outcome would result if the Court instead treated Mr. Holiday's March 20, 2019, request for interview as his formal grievance. And although Mr. Holiday submitted numerous healthcare request forms before resorting to the grievance process, they do not satisfy the exhaustion requirement. The PLRA requires strict compliance with respect to exhaustion, and Mr. Holiday did not follow the IDOC's grievance procedures. Although it may seem illogical that his deadline for grieving the conditions under which his TB test was administered expired while he was still being treated for the resulting infection and awaiting the results of a chest X-ray, Mr. Holiday could have timely grieved those events, which happened after

6

February 15, 2019, and after his formal grievance on March 6, 2019.

It is undisputed that Mr. Holiday failed to exhaust his available administrative remedies as required by the PLRA before filing this lawsuit. The consequence of these circumstances, in light of § 1997e(a), is that Mr. Holiday's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

If Mr. Holiday still has not been informed of his TB status, or has any other ongoing unmet medical needs related to this incident, he may refile his complaint after completing the administrative remedies process.

## IV. Conclusion

The defendants' motion for summary judgment, dkt. [41], is **granted**. Final judgment in accordance with this Order shall issue at this time.

**IT IS SO ORDERED.**

Date: 8/24/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

PAUL HOLIDAY
134027
PENDELTON CORRECTIONAL FACILITY
Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Timothy Loren Karns
WAGNER REESE, LLP
tkarns@wagnerreese.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com